George H. BITTNER
and Dorcas Jeanne Bittner,
husband and wife,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4157)

Trial was held May 13, 1999, in the courtroom of the Oregon Tax Court, Salem.

Robert L. Winkler, Parks, Bauer, Sime & Winkler, Salem, argued the cause for Plaintiffs (taxpayers).

Joseph A. Laronge, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Decision for Plaintiffs rendered July 20, 1999.

### CARL N. BYERS, Judge.

Plaintiffs (taxpayers) appeal from assessments of additional income tax for 1993. Taxpayers claim the right to defer recognition of gain from the sale of a residence on 80.31 acres of land. Defendant Department of Revenue (the department) denied deferral of recognition as to 54 acres in the belief that the predominant use of such land was for growing and harvesting trees.

## FACTS

Taxpayers purchased 304 acres in Polk County in 1963 for $35,000. The purchase price included an older house, a barn, and nonmerchantable timber. Over time, taxpayers sold off portions of the land and built a new house. As of the date of sale in question, taxpayers retained one home on 80.31 acres, which is the minimum "lot" size in an exclusive farm use zone. Of the 80.31 acres, 54 acres were specially assessed as forestland, 18.31 acres were considered exclusive farm use, and 8 acres were used for the homesite (7 of which were also forestland).

Taxpayers were approached in 1990 or 1991 by a realtor who proposed that they list the property for sale. Taxpayers agreed and listed their property for sale for $225,000. When the property did not sell, the realtor suggested lowering the price. Taxpayers declined to lower the price, and the listing expired. In the fall of 1992, another realtor approached taxpayers and asked if they were willing to sell their property to a prospective buyer. Mrs. Bittner named a price of $235,000. The realtor disclosed that the proposed purchaser was a timber harvesting company. That apparently raised no question with taxpayers, and the sale eventually closed.

Taxpayers deferred the gain relating to the sale of their property under Internal Revenue Code (IRC) section 1034. The department audited taxpayers' return and determined that the fair market value of the property at the time of sale was $438,384, not $235,000. More important, the department determined that the standing timber alone was worth $244,914. Accordingly, the department reallocated the gain and disallowed treatment of the 54 acres as part of the residence.

## ISSUE

Was the 54 acres of forestland part of taxpayers' principal residence?

## ANALYSIS

Initially, this case raises the question of the relationship of property tax law to personal income tax law. Accordingly, it is appropriate to examine both.

The 54 acres in question is designated forestland and specially assessed as such for purposes of property taxation. In 1971, taxpayers applied for forestland designation. At that time, the application form required the owner to certify (among other things not relevant here) that:

> "* * * [A]pplicant owner meets all requirements for eligibility required under this Act." (Referring to ORS 321.705 to ORS 321.765 and ORS 321.991.)

ORS 321.725(1)(a) (1969)[1] provided that owners may elect to have their land classified as forestland if:

> "The forest land is not used for uses which are incompatible with the cultivation of timber thereon, as determined in accordance with generally accepted principles of good forestry."

---

[1] In 1971, the legislature amended ORS 321.730 to require that the applicant state "whether the land is being held or used for the predominant purpose of growing and harvesting trees of marketable species." ORS 321.730(1)(c) (1971). However, Oregon Laws 1971, chapter 684, section 6 provides:

> "* * * The amendments contained in this 1971 Act shall apply beginning January 1, 1972, and shall not affect the validity of any classification of lands lawfully made under the provisions of ORS 321.725 as it read prior to amendment by this 1971 Act."

■ In 1993, the year of the sale, the income tax laws (IRC § 1034) allowed a taxpayer to defer recognition of gain realized on the sale of a principal residence if: (1) the taxpayer purchased a new residence within two years, and (2) the cost is equal to or exceeds the adjusted sale price of the old residence. In interpreting IRC § 1034, Treasury Regulation § 1.1034-1(c)(3)(ii) indicated that where part of the property is used as a principal residence and part for other purposes, an allocation must be made. IRC § 1034 did not define "principal residence," but Treasury Regulation 1.1034-1(c)(3)(i) indicated that:

"* * * Whether or not property is used by the taxpayer as his residence, * * * depends upon all the facts and circumstances in each case, including the good faith of the taxpayer."

■ The court concludes that in this particular case, the applicable property tax laws are not in conflict or mutually exclusive. Use of the subject forestland as part of taxpayers' personal residence was not necessarily "incompatible." Accordingly, it is necessary for the court to examine the evidence.

■ The evidence shows that during the period of time taxpayers held the property as forestland, they harvested timber twice. Once they harvested 13,000 board feet, and the other time they harvested 59,000 board feet. Mrs. Bittner testified that the harvesting was done by a neighbor at the same time he harvested his own timber. In both cases, it was done for the purpose of cleaning out windfalls, deadwood, insect infested trees, and other problems. When viewed in perspective, such actions do not suggest that taxpayers considered the 54 acres as used predominantly for the growing and harvesting of merchantable timber. It is more akin to a homeowner pruning a very large yard.

■ Perhaps the most striking facts here are that taxpayers sold their property to a timber harvesting company without knowledge as to the value of their timber. Assuming that the department's market value estimate of $244,914 is correct, the only reasonable explanation is that taxpayers viewed the timber as part of their principal residence. The egregious circumstances speak loudly about taxpayers'

intent. Had they viewed the forestland as being used to grow merchantable timber, they would have acted differently. Mrs. Bittner testified for taxpayers. She is an intelligent and experienced woman of 74 years of age. The court cannot accept that she would consciously allow herself to be taken advantage of by a timber company in an arm's-length transaction. The only reasonable explanation is that taxpayers' viewed the entire 80.31 acres as their residence.

■ In *Mertens Law of Federal Income Taxation*, it states:

"\* \* \* An active business use must be made of part of the property before an allocation between business and non-business use is required." 3 *Mertens Law of Federal Income Taxation* § 20.25, 89 (1989).

In this case, there is no evidence that taxpayers viewed the 54 acres as business property, which would qualify for deduction of expenses under IRC § 280A. Revenue Ruling 82-26, 1982-1 CB 114-116 further clarifies the distinction by stating:

"\* \* \* Not every use of a residence in connection with a taxpayer's trade or business necessitates an allocation. When such use does not meet the standards of section 280A(c)(1) of the Code, the taxpayer is not considered to have used a part of the property for business purposes within the meaning of section 1.1034-1(c)(3)(ii)."

■ Based upon all of the circumstances, taxpayers undoubtedly had a latent or passive intent to make a profit on the sale of their property. However, this same intent is held by virtually all homeowners. It is not unusual for a taxpayer to purchase a principal residence larger than needed, either in improvements or in land size, with the intent of making a profit on resale. Such intent, however, is subordinate to the taxpayer's primary intent to use the property as a principal residence. The preponderance of the evidence in this case indicates that taxpayers' principal intent was to use all of the 80.31 acres as their principal residence. Any intent to make a profit from their land was subordinate to their primary intent of using it as a principal residence. Otherwise, they would have conducted their activities in a different manner when they set the price for sale to a buyer in the timber

harvesting business. Judgment to be entered in accordance with this Opinion. Plaintiffs to recover costs.